**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

EDWARD STROTHERS,                  :
                                   :   Civil Action No. 05-3679 (JBS)
          Petitioner,              :
                                   :
     v.                            :   **OPINION**
                                   :
FEDERAL BUREAU OF PRISONS,         :
et al.,                            :
          Respondents.             :

**APPEARANCES:**

Petitioner pro se                  Counsel for Respondents
Edward Strothers                   John Andrew Ruymann
#83490-054                         Asst. U.S. Attorney
F.C.I. Fort Dix                    402 East State Street
P.O. Box 2000                      Room 430
Fort Dix, NJ 08640                 Trenton, NJ 08608

**SIMANDLE**, District Judge

Petitioner Edward Strothers, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The Respondents are the Federal Bureau of Prisons, Warden John Nash, and Harley Lappin.

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

I.   BACKGROUND

Petitioner asserts that he is scheduled to be released from prison on September 2, 2006.  He seeks an order from this Court compelling Respondents to consider Petitioner for placement in either a Community Corrections Center ("CCC") or home confinement either immediately or for at least the last six months of his sentence, pursuant to 18 U.S.C. §§ 3621 and 3624(c), as interpreted by the Bureau of Prisons prior to December 2002.

Respondents answer that Petitioner has no entitlement to consideration for placement in a CCC prior to the last ten percent of his sentence, pursuant to regulations which became effective February 14, 2005, and that he has not yet been considered for pre-release placement in a CCC.

II.   ANALYSIS

Federal law imposes upon the Bureau of Prisons the obligation and discretion to designate the place of a prisoner's imprisonment, as follows:

> (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoners's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
>
>    (1) the resources of the facility contemplated;
>
>    (2) the nature and circumstances of the offense;

>    (3) the history and characteristics of the prisoner;
>
>    (4) any statement by the court that imposed the sentence--
>
>       (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
>       (B) recommending a type of penal or correctional facility as appropriate; and
>
>    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28.
>
>    In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status.  The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

In addition, federal law provides that prisoners shall, to the extent practicable, serve the last portion of their imprisonment under conditions that will facilitate their transition from prison life to the community.

>    (c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.  ...

18 U.S.C. § 3624(c).

In implementing pre-release custody programming under this statute, the BOP has traditionally used a variety of community-

3

based programs, including CCCs, Comprehensive Sanctions Centers ("CSCs"), the Mothers and Infants Together ("MINT") program, and Intensive Confinement Centers ("ICCs"), as well as home confinement.  BOP Program Statement ("PS") 7310.04, <u>Community Corrections Center (CCC) Utilization and Transfer Procedure</u> (Dec. 16, 1999), provides guidance to BOP staff as to the administration of pre-release programs generally.

Before December 2002, the BOP interpreted these statutes to allow the BOP to designate inmates to serve any or all of their terms of imprisonment in Community Corrections Centers.  The BOP also had a long-standing policy of considering prisoners for up to 180 days pre-release placement in a CCC, regardless of the length of sentence.

On December 13, 2002, the Office of Legal Counsel of the United States Department of Justice prepared a Memorandum Opinion for Deputy Attorney General Larry D. Thompson on the question "whether the BOP has general authority, either upon the recommendation of the sentencing judge or otherwise, to place [a federal offender whom the BOP deems to be low-risk and nonviolent and who has received a short sentence of imprisonment] directly in community confinement at the outset of his sentence or to transfer him from prison to community confinement during the course of his sentence."

The Office of Legal Counsel ("OLC") began its analysis with a review of Federal Sentencing Guidelines provisions addressing imprisonment and community confinement and federal court opinions concluding that community confinement does not constitute "imprisonment" for purposes of these Sentencing Guidelines provisions.  The OLC progressed from this analysis to a determination that a community corrections center ("CCC") can not constitute a "penal or correctional facility" that may serve as a place of imprisonment within the meaning of § 3621(b).  If a CCC were considered a place of imprisonment within the meaning of § 3621(b), the OLC reasoned, "then the time limitation in section 3624(c) on BOP authority to transfer a prisoner to a non-prison site – i.e., for a period, not to exceed six months, of the last 10% of the term of his sentence – would be rendered null with respect to community confinement."  The OLC concluded that the practice, pursuant to the BOP's interpretation of § 3621(b), of placing certain prisoners in CCC for a period longer than that mandated by the specific language of § 3624(c) was not lawful.

Based upon this OLC Memorandum Opinion, on December 16, 2002, Deputy Attorney General Larry D. Thompson sent a Memorandum to BOP Director Kathleen Hawk Sawyer advising her the that BOP's prior interpretation of § 3621(b) as including CCCs is unlawful and directing the BOP to cease placement of federal prisoners in

CCCs except for the lesser of six months or ten percent of the sentence imposed on the offender.

On December 20, 2002, the BOP adopted the OLC legal opinion in a memorandum mandating that "Pre-release programming CCC designations are limited in duration to the last 10% of the prison sentence, not to exceed six months."  This "ten-percent rule" represented a reversal of long-standing BOP policy to consider prisoners for pre-release CCC placement for up to the final six months of their sentences (the "six-months rule"), regardless of the total term of imprisonment.  See, e.g., Schorr v. Menifee, 2004 WL 1320898, *2 (S.D.N.Y. June 14, 2004) (and cases cited therein).  The new ten-percent rule was instituted without notice to the public and was not reflected in any BOP Program Statement.  The new ten-percent rule generated a wave of litigation from federal prisoners seeking its invalidation on various grounds; federal courts addressing the issues raised in this litigation were sharply divided as to the validity of the new policy.  Id. at *3 (collecting cases).  See also Miranda v. Miner, Civil Action No. 04-2590(JBS) (D.N.J. Aug. 20, 2004).

Responding to this division, on August 18, 2004, the BOP published proposed regulations regarding placement in CCCs or home confinement.  See 69 Fed.Reg. 51213 (2004).  Because numerous U.S. District Courts had held that a CCC is a "penal or correctional facility" within the meaning of § 3621(b) and that

6

the BOP had discretion under 18 U.S.C. § 3621(b) to place offenders, sentenced to a term of imprisonment, into CCCs at any time during their imprisonment, the proposed regulations reflected an acquiescence in that statutory construction and a determination how to exercise that discretion.  Specifically, the BOP determined to exercise its discretion categorically to permit designation of inmates to community confinement[2] only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months, except where statutorily-created programs explicitly authorize greater periods of community confinement.

Following a period for comment, the BOP issued final regulations on January 10, 2005, to become effective on February 14, 2005.[3]  70 Fed. Reg. 1659 (2005).  Several commenters expressed concern that the new rule "undermines the Bureau's statutory authority to make prisoner-specific determinations under § 3621(b)."  The BOP responded that "[t]he Bureau will continue to evaluate these factors when making individual

---

[2] "Community confinement" is defined to include community corrections centers (also known as "halfway houses") and home confinement.

[3] During the comment period, two U.S. Courts of Appeals issued opinions finding that § 3621(b) authorizes the Bureau to place inmates in CCCs at any time during service of their prison sentence and that this authority is not limited by § 3624(c) to the last ten percent of the sentence being served. See Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004) and Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004).

designations to appropriate Bureau facilities, and this rule will not adversely affect such individualized determinations."  In response to the comment that the rule does not allow the Bureau to consider facility resources in making designation determinations, the Bureau responded that the "particular characteristics and advantages of CCCS ... make them best suited to particular inmates during the last ten percent of the prison sentence being served, not to exceed six months."  In addition, "[b]y ensuring that offenders sentenced to prison terms not be placed in CCCs except during the last ten percent of their prison sentences (not to exceed six months), the new rule will help ensure that CCCs remain available to serve the purposes for which their resources make them best suited."  Several commenters also asserted that the rule is not consistent with the intent of Congress.  Noting that several courts had held that the Bureau had discretion under § 3621(b) to place offenders sentenced to a term of imprisonment in CCCs at any time, the Bureau also noted that courts had acknowledged that the Bureau has discretion with regard to how it implements its mandatory pre-release obligation under § 3624(c), and stated that the Bureau considers it prudent to exercise its discretion in a manner to minimize the potential for disparity of treatment.  Accordingly, with one minor change not relevant here, the BOP adopted the proposed rules as final. See 28 C.F.R. §§ 570.20, 570.21.

During the pendency of this Petition, the Court of Appeals for the Third Circuit decided <u>Woodall v. Federal Bureau of Prisons</u>, 2005 WL 3436626 (3d Cir. Dec. 15, 2005), which now governs the outcome of this Petition.[4]

In <u>Woodall</u>, the Court of Appeals considered and rejected the validity of the February 14, 2005, regulations upon which Respondents rely here. Instead, the Court held that both initial placement decisions and pre-release transfer decisions must be individualized determinations based upon the factors enumerated in § 3621(b).

> In sum, individual determinations are required by § 3621(b). ... While the BOP may exercise considerable discretion, it must do so using the factors the Congress has specifically enumerated.
>
> ...
>
> The dissent argues that the § 3621(b) factors need not be considered by the BOP until an inmate transfer is "actually considered." We disagree. ...
>
> ... The statute as a whole, if it is to have practical effect, indicates that the factors enumerated must be considered in making determinations regarding where to initially place an inmate, as well as whether <u>or</u> <u>not</u> to transfer him. ... The congressional intent here is clear: determinations regarding the placement scheme-including where a prisoner is held, and when transfer is appropriate-must take into consideration individualized circumstances. ...
>
> ...

---

[4] The Court of Appeals held that a § 2241 petition is an appropriate vehicle to challenge the Bureau of Prisons' decision whether to place an inmate in a CCC. Accordingly, this Court has jurisdiction over this Petition.

> In short, we conclude that the § 3621(b) factors apply to BOP determinations regarding whether or not initial placements or transfers are appropriate. We thus do not find that the factors are limited by the temporal references in § 3624.

2005 WL 3436626 at *10, *12-13.

Thus, Petitioner is entitled to an individualized determination as to both initial and pre-release placement based upon the factors identified in § 3621(b). As noted by the Court of Appeals, the fact that the BOP may assign a prisoner to a CCC does not mean that it must, provided that the BOP reconsiders this case and gives individualized reasons for its choice of placement, as required by law. Accordingly, the proper remedy here is an Order granting the writ to the extent of requiring Respondents to consider, in good faith, where Petitioner should be assigned, to make individualized findings, and to complete such action within Fourteen (14) days and report same to the Court.

### III. CONCLUSION

For the reasons set forth above, the writ must be granted in part. An appropriate order follows.


s/ Jerome B. Simandle
Jerome B. Simandle
United States District Judge

Dated: **February 7, 2006**

10